962 So.2d 1108 (2007)
STATE of Louisiana, Appellee
v.
Carl D. JONES, Jr., Appellant.
No. 42,301-KA.
Court of Appeal of Louisiana, Second Circuit.
July 25, 2007.
*1109 E. Roland Charles, Robert S. Noel, II, Monroe, for Appellant.
Jerry L. Jones, District Attorney, Charles L. Brumfield, Assistant District Attorney, for Appellee.
Before BROWN, GASKINS, and PEATROSS, JJ.
BROWN, Chief Judge.
Defendant, Carl D. Jones, Jr., was convicted of armed robbery, a violation of La. R.S. 14:64, and conspiracy to commit armed robbery, a violation of La. R.S. 14:26 and 14:64. Defendant received 30 years at hard labor without benefit of parole, probation, or suspension of sentence on the armed robbery charge, and 15 years at hard labor on the conspiracy conviction. The trial court ordered the sentences to be served concurrently. Defendant appeals his sentence as excessive. We affirm.

Facts
Around 4:30 a.m. on June 8, 2003, defendant, along with Callie Swinson, went to the home of James Campbell to rob him. They had worked out a plan for the robbery that night. Swinson knocked on the door, and Campbell, who was in bed asleep went to the door. The victim recognized Swinson and opened the door. Defendant burst into the house and ordered the victim to the floor at gunpoint. Defendant and Swinson searched Campbell's pants and took his money. At one point, the victim who was down on the floor believed that he would be executed and tried to wrest the gun away from defendant. During the fracas, the gun discharged and a bullet struck Campbell in the arm. Defendant then began pistol whipping the victim who momentarily lost consciousness. Campbell suffered a broken neck as a result of the brutal beating. In fact, the police were unable to interview Campbell for approximately five months after the robbery because of the injuries inflicted upon him by defendant.
Callie Swinson was later arrested and admitted her involvement in the robbery. In exchange for her testimony against defendant, Swinson pled guilty to conspiracy to commit armed robbery and received probation. Defendant was charged with armed robbery and conspiracy to commit armed robbery. The trial court appointed a sanity commission to examine defendant's mental condition. Defendant was assessed by two psychiatrists whose findings were submitted to the trial court. Thereafter, the court ruled that defendant possessed the requisite mental capacity to stand trial. Defendant entered a plea of not guilty and not guilty by reason of insanity. A jury convicted defendant of both charges, and the trial court imposed concurrent 30-year (without benefit) and 15-year sentences.
Pursuant to a motion for an out-of-time appeal, the trial court allowed present counsel to move for reconsideration of sentence. This motion was denied and defendant has appealed, urging that his sentence is excessive.

Discussion
According to defendant, the trial court discounted evidence of his mental illness presented in the findings of the *1110 sanity commission and in the testimony of his family members. Defendant argues that in commenting on his drug use, the trial court failed to consider that mental illness is often accompanied by drug use. Claiming that his mental illness was never adequately addressed at sentencing, defendant seeks a remand for an evidentiary hearing on his mental state and a reduction in his sentence.
In order to determine defendant's mental capacity to stand trial, the court appointed a sanity commission made up of two experts, Drs. Saxon Elliott and Richard Williams. Specifically, the purpose of the commission was to determine whether defendant had a mental disease or defect which would impair his ability to understand the proceedings against him or to assist counsel in his defense.
Both experts concluded that defendant was not suffering from a mental disease or defect which would preclude his competency to stand trial. Particularly, they found that defendant possessed the ability to consult with his attorney with a reasonable degree of rational understanding and had a rational and factual understanding of the proceedings against him. After these findings were submitted to the trial court, the court ruled that defendant was mentally competent to assist his attorney in his defense.
At trial, as related to defendant's plea of not guilty by reason of insanity, the jury heard that part of Dr. Elliott's report in which he concluded with reasonable certainty that defendant was not suffering from a mental disease or defect that rendered him incapable of distinguishing right from wrong at the time of the instant offense. The jurors also heard portions of Dr. Williams' report detailing defendant's psychiatric history, including a statement by defendant that he had been in and out of psychiatric hospitals since he began hearing voices at the age of 14. The jury also heard excerpts from Dr. Williams' report in which defendant stated, without being specific, that he had been diagnosed with schizophrenia and had been admitted to several psychiatric facilities. Clearly, the jury had sufficient evidence from which to weigh defendant's mental status at the time of the offense, and the trial court had the full reports of both experts for consideration prior to sentencing.
The trial court also considered defendant's criminal history, which began when he was 17 and included offenses such as attempted simple burglary, conspiracy to commit simple burglary, possession of marijuana, among many others. Defendant was placed on supervision three times, twice on probation and once on parole. Defendant had his supervision revoked each time for failure to comply with the prescribed conditions. Of significance to the sentencing court was that, after being charged with the instant offense but prior to his trial and conviction, defendant was arrested for another armed robbery in Ouachita Parish on September 1, 2005. The court observed that defendant never admitted his participation in the instant crime.
The trial court further contemplated the seriousness of the offense and the likelihood of rehabilitation. The victim, an elderly man, was severely injured during defendant's attack. In addition to being shot, the victim suffered a broken neck which required him to miss 8½ months of work while undergoing extensive medical treatment. The trial court found that there was a very high likelihood that defendant would commit this type of offense in the future if he was not incarcerated.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court may not set aside a sentence as excessive. State v. Guzman, *1111 99-1528, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.05/12/04), 873 So.2d 939
Given the circumstances of this case and defendant's background, we cannot say that this sentence is excessive. Defendant is a repeat offender with a history of revoked probations. His victim was mercilessly pistol-whipped, seriously injured, and could have easily been killed when the gun discharged. Defendant's sentence (concurrent 30-year and 15-year terms for a total term of 30 years) is clearly proportionate to the seriousness of the crimes of conviction.[1]

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] La. R.S. 14:64(B) provides for a term of imprisonment at hard labor for not less than ten years and not more than ninety-nine years; the entirety of this sentence must be served without benefit of parole, probation, or suspension of sentence. La. R.S. 14:26(B) and (C) provides that whoever is a party to a criminal conspiracy to commit any crime shall be fined or imprisoned or both in the same manner as for the offense contemplated by the conspirators. Subsection (C) of La. R.S. 14:26 further provides that this fine or imprisonment shall not exceed one-half of the largest fine or one-half of the longest term of imprisonment prescribed for such offense (or both).